**Pearlie Mai HAYNIE and her counsel, Avon N. Williams, Jr., Appellants,**

v.

**ROSS GEAR DIVISION OF TRW, INC., et al., Appellees.**

No. 85–5222.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 28, 1986.

Decided Aug. 15, 1986.

Rehearing and Rehearing En Banc Denied Nov. 4, 1986.

[*] Judge Jones was not a member of the court when this case was submitted to the court en banc and did not participate in this decision.

Avon N. Williams, Jr., Russell T. Perkins, argued, Williams & Dinkins, Nashville, Tenn., for appellants.

William N. Ozier, argued, Bass, Berry, & Sims, Nashville, Tenn., Mark A. Allen, argued, Memphis, Tenn., for appellees.

Before LIVELY, Chief Judge; and MERRITT and NELSON, Circuit Judges.

PER CURIAM.

Pearlie Mai Haynie, a sometime factory worker with a history of health problems, was discharged by her employer, the Ross Gear Division of TRW, for chronic absenteeism. Through her union Ms. Haynie filed a grievance under the collective bargaining agreement for the unit of which she was a member, and the dispute was submitted to arbitration. Ms. Haynie, who is black, claimed initially that the company was guilty of racial discrimination, but on the recommendation of the union representative who appeared on her behalf at the arbitration hearing that claim was not pressed at the hearing. The arbitrator held that Ms. Haynie had been wrongfully discharged, and he ordered that she be reinstated without backpay. She did not return to work because of layoffs occasioned by lack of business.

Engaging Avon Williams, a prominent civil rights lawyer, as her counsel, Ms. Haynie sued both her employer and her union, UAW Local # 342, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*). The case was tried to the court, and the defendant union was dismissed at the conclusion of the plaintiff's proofs. Ross Gear was required to put on a defense, the court believing that Ms. Haynie had established a prima facie case of discrimination against the company, but Ross Gear's proofs convincingly rebutted Ms. Haynie's prima facie case, and the court entered judgment for Ross Gear at the conclusion of all the evidence. The judgment in favor of Ross Gear and the union was affirmed on appeal. The trial court then entered judgment for the union against both Ms. Haynie and Mr. Williams for the union's costs

and attorney fees, and entered judgment for Ross Gear against Ms. Haynie alone for the company's costs and attorney fees. We shall reverse the award to Ross Gear, affirm the award to the union as far as Mr. Williams is concerned, and remand for further proceedings with respect to Ms. Haynie.

I

Ms. Haynie, now in her mid forties, has been a factory worker most of her adult life. She has an eighth grade education. She went to work for Ross Gear in 1973 and had an unremarkable work record until February of 1977. At that time she began to experience a variety of health problems, and she absented herself from work, sometimes on doctor's orders and sometimes not, on numerous occasions. After repeated warnings about absenteeism Ross Gear discharged her in January of 1980. The union grievance committee interceded on her behalf, and she was reinstated without loss of seniority or benefits; but the company impressed on her that if she could not reasonably expect to stay at work when she returned, she should take an extended leave of absence. The company made clear that it did not want to be in the position of having to depend on the attendance of a worker whose attendance could never be counted on. Ms. Haynie did not go on extended leave, and on February 27, 1981, after a further warning about excessive absenteeism and after the passage of some ten months in which the number of days Ms. Haynie worked amounted to less than four weeks, Ross Gear discharged her "for chronic absenteeism due to excessive and extended medical leaves."

Ms. Haynie filed a grievance under the collective bargaining agreement to which Ross Gear was a party, claiming, among other things, that no white employee had ever been discharged for taking excessive medical leaves. The union's grievance committee believed that Ms. Haynie had a legitimate grievance, but found no evidence of racial or gender-based discrimination. Both white and black employees, male and female, had been granted extended medical leaves of absence, an option of which Ms. Haynie had not sought to avail herself.

Prior to the arbitration hearing David Dyer, the area director of the international union, discussed the case with the union committee and with Ms. Haynie and the lawyer who was representing her at that time, J.C. McMurtry. Mr. Dyer expressed a willingness to argue discrimination before the arbitrator, but no one was able to come up with any evidence of discrimination that seemed capable of withstanding scrutiny. It was Mr. Dyer's impression that the most likely reason for Ms. Haynie's discharge was that she had missed a great many "unaccountable" days and seemed to get well enough to return to work whenever her sickness and accident benefits ran out. Mr. Dyer recommended to Ms. Haynie, in the presence of her attorney, that the discrimination claim not be pressed. Mr. Dyer knew that Ms. Haynie had been operated on for cancer, a disease from which his own wife had died, and he knew that cancer patients could be strong one day and weak the next. He proposed to stress this before the arbitrator, and he told Ms. Haynie that he "wanted to win this case very bad." Ms. Haynie agreed with his proposed approach, and it was also agreed that Mr. Dyer should make the presentation before the arbitrator instead of Mr. McMurtry.

The case was heard by Arbitrator Monroe Berkowitz on September 25, 1981. When the arbitration hearing was over Ms. Haynie told Mr. Dyer that he was one of the best attorneys she had ever seen. On being told that he was not an attorney, she said that she would still want him to represent her in any other cases she might have. Both Ms. Haynie and her lawyer told Mr. Dyer that they did not know how he could have done a better job of representing her.

On January 20, 1982, the arbitrator issued an award holding that Ms. Haynie had been discharged in violation of the collective bargaining agreement. No backpay was awarded, but there is no reason to suppose that the arbitrator would have

awarded backpay had the claim of racial discrimination been pressed. Ms. Haynie was not called back to work, but, again, there is no reason to suppose that the situation would have been any different had the racial discrimination claim been pressed.

Ms. Haynie filed charges against Ross Gear and the union with the United States Equal Employment Opportunity Commission on March 18, 1982, and she brought suit in Federal District Court on April 12, 1982. She charged the company with discrimination in terminating her employment, in contesting her grievance, and in refusing to give her backpay. She charged the union with discrimination in failing to complain of discrimination in the grievance proceeding and in failing to render appropriate post-arbitration assistance.

Ross Gear promptly moved for judgment on the grounds that (1) Ms. Haynie had failed to file a charge of discrimination within 180 days after the date of her discharge, (2) no right to sue notice had been issued, and (3) the action had not been commenced within one year of the date on which the cause of action accrued. The EEOC issued Ms. Haynie a notice of right to sue on June 1, 1982, and the complaint was amended to so allege. The trial court reserved its ruling on Ross Gear's motion, and the case went to trial after both defendants had filed answers denying liability.

The court decided, at the conclusion of the case in chief, that Ms. Haynie had failed to make out a case against the union, and the union was dismissed at that stage. Although Ross Gear renewed its motion for judgment, the court concluded that under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the proofs offered by Ms. Haynie were enough to establish a prima facie case of discrimination against Ross Gear, and the court was not persuaded that the statute of limitations necessarily provided a complete defense.

In its memorandum of decision granting judgment in favor of Ross Gear after both sides had presented their evidence and had rested their cases, the trial court concluded that there was no basis for a finding that the 180 day limitation period for filing an administrative charge of discrimination had been equitably tolled, and the court similarly found that there was no basis for concluding that Ms. Haynie was not bound by Tennessee's one year statute of limitations insofar as her claims under 42 U.S.C. § 1981 were concerned. The allegations that the arbitrator's decision had not been properly enforced and that unlawful discrimination had occurred after the arbitration decision were not necessarily time barred, however, and the court therefore reviewed the plaintiff's claims of multi-faceted racial discrimination in some detail.

Characterizing her testimony as "not worthy of credit," the court observed that Ms. Haynie "impressed the court most forcefully as being an individual who was willing to say whatever she might in order to establish a claim." The court said that Ms. Haynie's claim that her discharge resulted from discrimination rested, in large part, upon the intimation that she had no way of knowing the company was thinking of firing her, and the court found "[h]er memory ... conveniently sketchy with respect to the subject of warnings about her attendance record." The court considered Ms. Haynie's pattern of behavior "perfectly consistent with what might be expected from an employee who only returned to work for a short time so that she could collect sick leave benefits for another illness," and although the arbitrator eventually concluded that the company was wrong under the collective bargaining agreement, "nothing convince[d] the court that racial considerations underlay the effort to discharge her." The court was in total agreement with the arbitrator's decision not to award backpay: "[i]n view of the attendance record which plaintiff had established up to the time of her discharge, any attempt to set an amount of backpay for her would be founded in rife speculation."

The judgment of the trial court on the merits of Ms. Haynie's case was affirmed, on appeal, by the unanimous vote of a three judge panel of this court. The trial court then received extensive evidence relating to the applications filed by the union and Ross Gear for an award of their costs and attorney fees. The applications were fully briefed and argued, and in a memorandum decision filed on December 4, 1984, the court held Ms. Haynie liable to both the union and Ross Gear. The court declared that the defendants would have been entitled to recover their attorney fees from Ms. Haynie even under the "subjective bad faith" exception to the traditional American rule that each side must bear its own attorney fees, and the court went on to hold that the attorney fees should be borne by Ms. Haynie under 42 U.S.C. § 1988 in any event because her action was frivolous and without foundation and the moving parties were thus entitled to prevail under the test prescribed by *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). On the strength, presumably, of the impressions recorded in its decision on the merits, the trial court said "[t]here is not a doubt in the court's mind that the plaintiff brought this action in an effort to harrass [sic] Ross Gear and Local 342."

The trial court found the case against Mr. Williams, Ms. Haynie's counsel, "more troubling." Ross Gear was held not to be entitled to recover any of its costs and attorney fees from Mr. Williams personally because of the impossibility of separating the cost of defending the discriminatory discharge claim from the cost of defending the company's challenge to Ms. Haynie's grievance. Based on the court's conclusion that there was no colorable claim that the union's conduct had tolled the statute of limitations, however, and its conclusion that the result achieved in the arbitration proceedings was not the product of any improper discrimination on the union's part, the trial court decided that Mr. Williams should be held liable for the union's attorney fees and costs. The court rejected as "groundless" any notion that Ms. Haynie would have been reinstated with backpay if the union had pursued a racial discrimination claim. "The arbitrator refused to award the plaintiff backpay," said the court, "because it would have been the wildest fiction for him to assume that the plaintiff would have been available to work from the time she was discharged until she was reinstated."

The court went on to consider the reasonableness of the fees and costs requested, and decided that the $45.00 per hour requested by the union attorneys represented a very reasonable hourly rate for attorneys of their abilities and experience. Applying that hourly rate to all of the attorney time that was documented, and allowing the costs claimed of $282.50, the court held Ms. Haynie and her counsel jointly and severally liable to the union for $5,844.50. Finding that the attorney fees and costs claimed by Ross Gear were meticulously documented, that the time charged by the company's lawyers had been reasonably and efficiently spent, that the hourly rates they claimed were reasonable for the community, and that the company's documented costs appeared reasonable, the court held that Ross Gear was entitled to recover a total of $18,287.17 from Ms. Haynie.

The trial court did not inquire into Ms. Haynie's ability to pay a $24,131.67 judgment, beyond noting that her original complaint had alleged that she had the financial wherewithal to maintain a class action. Ms. Haynie moved to alter or amend the judgment, supporting her motion with an affidavit in which she swore that she had pursued her lawsuit because she strongly believed that she was a victim of racial discrimination; that she had not been employed since November 14, 1980; that she had recently married a man who was also unemployed and had lost his disability benefits; that she was receiving food stamps; that her living expenses were paid by a daughter; and that her only assets were a modest home, a few household furnishings, and a 1969 automobile not in operating condition. The affidavit further explained

that when she filed her lawsuit Ms. Haynie had not anticipated that she would be out of work so long, the arbitrator having directed that she be reinstated. The motion to alter or amend the judgment was denied, apparently without opinion, as was a motion for relief from the order denying the motion.

## II

As far as the award of fees and costs against Ms. Haynie is concerned, the finding that this action was brought in an effort to harass Ross Gear and Local 342 strikes us as clearly erroneous. There was no evidence that Ms. Haynie was motivated by an improper desire to hurt the defendants, as opposed to a straightforward desire to help herself. The latter motive is unexceptionable, under our legal system, and Ms. Haynie having placed herself in the hands of a lawyer described by the trial court as "one of the finest lawyers in Nashville," it is hard for us to see how Ms. Haynie can be faulted for accepting the lawyer's judgment that the case was worth pursuing.

We are not unmindful of the trial court's observations regarding Ms. Haynie's candor, or lack of it, and we suppose that if Diogenes, searching for an honest man, had wandered into the courtroom during the trial of this case, he might not have considered his quest at an end on meeting the plaintiff—although the rough edges on the plaintiff's testimony may have stemmed more from a lack of pre-trial preparation ("sandpapering," in the trial court's terminology) on the part of her badly overworked counsel than from any inherent defect in the plaintiff's character. If Ms. Haynie's reverence for objective fact left something to be desired, however, there is no reason to suppose that she was guilty of the kind of blatant perjury committed in *Price v. Pelka,* 690 F.2d 98 (6th Cir.1982). The plaintiff there, having prevailed on the merits, was allowed to recover her attorney fees notwithstanding a performance on the witness stand that makes Ms. Haynie's testimony look like a model of

exactitude by comparison. Life has not dealt kindly with Ms. Haynie, and although she was wrong in blaming Ross Gear for her troubles, the record of this case does not, to our minds, warrant the conclusion that Ms. Haynie knew for a certainty that she had not been discriminated against.

Even though Ms. Haynie did not bring this action in subjective bad faith, *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), teaches that the court still had discretion to require her to bear the prevailing defendants' attorney fees, under 42 U.S.C. § 2000e–5(k), if her action was "frivolous, unreasonable, or without foundation." The trial court found, however, that Ms. Haynie had made out a *prima facie* case of discrimination against Ross Gear, and we are at a loss to understand how a case that is strong enough to withstand a motion for judgment at the conclusion of the plaintiff's proofs can be considered "frivolous, unreasonable, or without foundation." We have held heretofore that where one of the plaintiff's claims is non-frivolous, the defendant's attorney fees may not be shifted to the plaintiff even though others of the plaintiff's claims are patently without merit. *Tarter v. Raybuck,* 742 F.2d 977, 987–88 (6th Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). We believe the trial court abused its discretion in holding Ms. Haynie responsible for Ross Gear's attorney fees and costs.

We find no such abuse of discretion as far as the union's costs and fees are concerned. The union did exceedingly well by Ms. Haynie. The union's international representative was obviously sympathetic toward her, notwithstanding the thinness of her claim, and the approach he followed before the arbitrator—to very good effect—was specifically discussed with and approved in advance by Ms. Haynie and her lawyer. The union's post-arbitration assistance left nothing to be desired. Ms. Haynie was unable to make a *prima facie* case against the union because no such case existed. We believe Ms. Haynie's claim

against the union was totally baseless, and whatever her subjective state of mind may have been with respect to the union, the statute gave the trial court discretion to require that Ms. Haynie bear the union's costs and attorney fees.

■ As to Mr. Williams, the question under 28 U.S.C. § 1927 is whether he "multiplie[d] the proceedings ... unreasonably and vexatiously." An affirmative answer to that question does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have *carte blanche* to burden the federal courts by pursuing claims that he should know are frivolous (see *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986)), and we cannot say that the trial court was clearly wrong in finding that Mr. Williams did just that in pursuing the claim against the union.

If Ms. Haynie's financial situation were such as to make it reasonable for the union's expenses to be borne by Ms. Haynie and Mr. Williams jointly, we would not be disposed to interfere with either branch of the court's judgment regarding the union's fees and costs. The papers available to us, however, do not indicate the basis on which the court rejected Ms. Haynie's motion to alter or amend the judgment, and it would be helpful for us to know the trial court's thinking on this.

Accordingly, the judgment is REVERSED insofar as it imposes liability on Ms. Haynie for Ross Gear's costs and attorney fees, AFFIRMED insofar as it imposes liability on Mr. Williams for the union's costs and attorney fees, and VACATED insofar as it imposes liability on Ms. Haynie for the latter costs and fees. The cause is REMANDED to the district court for further consideration of the question whether Ms. Haynie should be relieved from liability, in whole or in part, because of the facts set forth in her affidavit. Each party to this appeal shall bear his own costs on appeal.